Mr. Hammervold, may I please the court. My name is Mark Hammervold and I'm representing myself and my solo law practice, Hammervold PLC, in this appeal. And I'm asking this court to reverse the decision of the trial court that prevented me from exercising my right to self-representation at the trial court level, as well as disqualified me from being a sole representative and counsel for my solo practice, Hammervold PLC. The right to self-representation was considered by the founders of this country to be a basic right. And since the very first year of our country, it has been statutorily guaranteed to litigants in federal court. It was passed by the nation's first Congress and signed by President George Washington into law the day before even the Sixth Amendment was proposed. Ginsburg. Yeah, but I don't think he contemplated a situation like this where the district court has said that only the lawyers may see the confidential information, not the parties to the suit, and that's you. So I don't think you can credit the founders with supporting your position in this case. It's been pretty clear as to why you should not be allowed to see this information. And Your Honor, the district court has the discretion to prevent me from seeing that information. That is a separate question, though, I would submit than whether I have the right to self-representation. That is the question. It is, Your Honor. And the example case that I demonstrated the court to is the Levine case. And in that case, there was even a stronger showing against the litigant having access to the information. In that case, a patent attorney had sued several companies that held patents and sought that information in discovery. It was produced subject to an attorney's eyes only. He sought to modify the protection of order to get access to that information, and that was denied. Then he terminated his attorneys and said, well, now I get access to it. And the court allowed him to represent himself, but said, you still don't get access to the attorney's eyes only information. And it may be that I'm denied access to that. It may be that I have to represent myself without ever getting any information that they designate as attorney's eyes only. That will be a question that the court will have to resolve in light of its Rule 26 discretion. And the court has substantial tools and substantial discretion to be able to decide that. The court does not have the same discretion to prevent me from representing myself or from disqualifying me from representing my sole law practice. And that's because this court recognized in Chapman v. United States that there are two tests that apply to whether a party has a right to assert the right to self-representation. The first is when it is clearly asserted before trial it is entirely unqualified. If it only when it is asserted once trial has begun, does the court engage in this type of balancing test where the court compares the defendant's need to represent themselves versus the potential prejudice to the proceeding. And respectfully, the trial court erred in this case because it confused the legal standard that is applicable to a lawyer-driven withdrawal and the right to assert self-representation. There was a motion to withdraw in this case, but it was to effectuate my clear invocation of the right to self-representation. It's not a motion to withdraw over my objection. It's not a motion to withdraw for one of the good cause reasons in 1.15 of the Texas Ethical Rules, such as a client's failure to pay or a disagreement over the goals of self-representation. Was there any evidence that you were unable to pay your lawyer before he tried to withdraw? There was, Your Honor. I testified before the court, and I said specifically that my liability insurance policy, which is a $100,000 diminishing policy, had essentially been half eroded at that time, and there were 17 depositions scheduled, and that it was going to erode immediately. And I acted preemptively to prevent a situation where there would be a potential delay to trial. I recognize that my policy is going to be exhausted, and I'm going to be in a situation where I can either decide not to participate in discovery, or the alternative would—I'm not sure. I think I'd have to be forced to do that. It was a bad situation. I testified before the court, I need to do this in order to get my farest shot. I'm going to be my best advocate here. I can't afford to pay a retained attorney to do everything that I would want him to do to effectively represent me in this case. And I wanted to represent myself. And I provided that explanation, and the court measured my explanation against the standard of good cause, and against the standard of whether I had satisfied my burden to show the absence of prejudice to the proceeding. That's not the law with respect to self-representation. And no court has ever held that good cause must be shown to exercise the right to self-representation. I researched the authorities, and the only case I ever found was a state case from Ohio where the judge specifically wrote to say that he disagreed with the trial court's opposing that standard. And the court said in that case, I'm not aware of any rule that requires good faith—or sorry, not good faith—good cause be shown. The only restriction that has been recognized in this circuit is that the self—rights of self-representation can be forfeited whenever the litigate involves indeliberate and serious misconduct. And the cases that describe that misconduct are talking about misconduct that occurs in litigation, not before, and conduct that essentially amounts to contempt of court. In the U.S. v. Long case, the litigant that was stripped of the right to self-representation, for example, would be non-responsive to the judge's questions. There's no insinuation or allegation of any behavior like that from me in the court below. And there was no finding by the court that I engaged in that type of conduct, such that my right should be stripped. The reason why the trial court reached the decision it did is because it was applying an erroneous standard. Let me—Counsel, let me ask you a question. There's a suggestion that you were acting in an obstructionist manner and undertook this so that you could obtain access to information that you would not otherwise be able to obtain. I'd like you to comment on that, if you would. Well, Your Honor, I just want to first mention that the actual finding in the order was not that I had done that, but that I hadn't affirmatively shown the lack of a potential prejudice. I hadn't sufficiently addressed potential concerns about that. So this is a product of applying the incorrect legal standard that applies to a lawyer-driven withdrawal. But second of all—and I want to go back to the Levine case here—even if this court grants and says, I had a right to appear myself, I may not get access to that information. And I still intend to go forward with this self-representation, because it's honestly my only option at this point. My policy has entirely exhausted. I don't have the resources to defend through retained counsel. And the case law on this demonstrates that I don't automatically have a right to that information. Secondly, the attorneys' eyes only— What about the nature of the information that's subject to that contest about access to information? What's it—it's so sensitive. What's the nature of that? Well, Your Honor, this was an area of dispute that happened. And honestly, I wasn't involved in the case for it to see it to end. But the defendants were designating entire depositions, attorneys' eyes only. For example, the plaintiff, Mr. Blank, was ultimately deposed after I was severed from the case. I haven't seen that deposition, because the entirety of the case was designated attorneys' eyes only. So I haven't been able to see that. And that's the type of thing that they were doing, and that's why we were fighting against it. Well, the suggestion is that you elected to defend yourself so that as an attorney, you were wearing your attorney's hat rather than the litigant's hat, if there's such a thing. Then you would gain access to this sealed deposition testimony. I guess that's what you're talking about. Well, Your Honor, there are many ways in which the trial court could resolve this issue. The Levine case, which is essentially where the court made a finding evidentiary or evidentiary. Well, that was suggested by the timing of when you elected to do this. And that is you would suddenly decide you're going to represent yourself because you needed to get access to this other information. Now, I have two levels of questions about that. Why would there be a difference in accessing the information or not, depending on whether you were acting as attorney for yourself versus the party? And that was a suggestion by the plaintiffs. They accused me of acting tactically as a gamesmanship based on the timing. I testified before the court, and I told the court my reasons for wanting to do this, because this case is an attack on me, and I think I'm going to be my best advocate, and I do not have the resources. I moved preemptively because there were a number of depositions that were being scheduled, and I saw the writing on the wall that my policy is eroded, and it now has entirely eroded. Well, you're a defendant in the case. You're going to testify, right? That is right, Your Honor. So you can't be a lawyer and a witness. Generally not. The applicable rule would be 3.08. The 3.08a3 does provide that whenever the lawyer is a defendant, that in that situation you can serve as the dual role. So with respect to the issue of whether I can represent myself individually, there would be no – it's specifically authorized to perform the dual role. Would you represent yourself or your corporation? Aren't you the sole shareholder? I would represent both, Your Honor. And respectfully, with respect – with regard to my corporate entity, there was also an error in denying me the right to represent that entity. Generally, a layperson cannot appear on behalf of a corporation, no matter how closely the relationship is between that layperson – Would this change in counsel affect the timing of the proceedings? You were represented by Yank Perrion, and I guess he's – he was also – it's a substitution of counsel that's going on, correct? Correct, Your Honor. Okay. Now, would that substitution affect the proceedings themselves? Does it require just a delay from preparation of any kind? No, Your Honor. And I have been following the case. I'm intimately familiar with it. We represent to the Court, and I wholeheartedly believe that we would have been ready for the trial date that was scheduled to occur in August. Now, that trial date – this case has been severed, so there is not any case schedules for the individual case that remains against me. The case against Mr. Mnuchin, the primary defendant, was actually settled. And Judge Clement asked about the settlement, and it was indicated that the settlement occurred by a payment to Mr. Mnuchin. And I want to bring this to the Court's attention because I want to highlight the stakes of this appeal. This appeal is about the right to self-representation, which is a very core and fundamental right recognized by statute, but it's also about the practical circumstances to me and my firm. I need to be able to represent myself in order to effectively give a defense and in order to avoid being pressured into a settlement of a case that has no merit against me. And I'm asking just for the opportunity to have a fair chance to do so. I also want to address one of the arguments that appears in the appellee's brief and in the decision of the trial court, which is that one of the reasons for denying my ability to represent myself was that it would lead to hybrid representation. Now, that's never been the rule in the Fifth Circuit. The Fifth Circuit case on point is U.S. v. Canoe. This is cited by both parties' briefs. And the Fifth Circuit has only held that you don't have a right to both halves of the right of the statute. You either represent yourself without any attorney or you stick with your counsel. You cannot be associate and co-counsel yourself, or at least you don't have the right to. The district court has discretion to allow it, but you don't have the right. And in Canoe, there were two motions. The first one is Canoe sought to represent himself and still keep his counsel, and the court said, you don't have the opportunity to do that. Then Canoe moved forward with a second motion and said, I'm getting rid of my counsel. I want to represent myself. And the court said at that point that Canoe had a right to represent himself because it was clear and unambiguous that he intended to do so. Here, it's also clear. I want to represent myself, and I'm not looking to have any other attorney involved. If the court grants what I'm asking, there will be no hybrid representation. With respect, the only case that the Applees are able to cite in their support is U.S. v. Private Brands. And that's a 1957 case that didn't apply the legal standard of this circuit. In that case, the court said that the district court didn't abuse its discretion and properly balance the considerations in the case. That's not the standard here. And that case also involved a litigant that was trying to avail himself of an effective hybrid representation. There was a president and a corporation. There was a motion filed to amend the sealing order, the protection according to certain information, as Honor said, as a motion for protective order modification. And the assertion is that just an election to defend yourself was responsive to that motion. Can you speak to that? That's correct, Your Honor. And so what's the purpose then of defending yourself? You explained it because of finances, your liability coverage, and so forth. What does the protective order have to do with that? Well, Your Honor, they have really focused on the protective order. They've tried to say this is about gamesmanship. Honestly, I probably don't need a lot of access to the information. They have the burden to show liability by me. I don't think that they have a chance to do so. The only situation in which they have a chance of prevailing is if they leverage me by the fact that I have to go forward, but I can't afford my counsel or I'm not able to speak on my own behalf. That's the only situation where I'm worried about losing. That's my concern. I'm not trying to affect anything else. And I think that the trial court has the discretion to resolve any of these other considerations. What's the effect of the modification of the protective order that was proposed? You say you did this in response to that. What was that proposed order modification? Well, Your Honor, there was a proposal. The initial protective order said that attorneys eyes only, and it did not specify who are the attorneys that can review this information. The defendants in this case were all attorneys, and so there was a modification to make clear that the individual parties could not view attorneys eyes only information. So it appears to me then from what you're saying that the reason you elected to defend yourself was to escape the reach of that protective order. No, Your Honor. And I would still want to defend myself even if the court says you still can't review this information. I need to defend myself because I don't have the resources to do so through retained counsel, and I will be my best advocate in this case. All right. Thank you, Mr. Hummel. I'll let you save time for rebuttal. Mr. Klatsky. May it please the Court. I'm Howard Klatsky, and I represent the Appellees in this proceeding, the Diamond Consortium and David Blank. My client's position on this appeal is premised upon four key points. Number one, it is well established under applicable law, including law created and adopted by the Fifth Circuit, that an attorney may withdraw from representation only upon a showing of good cause. The attorney seeking to withdraw bears the burden of establishing good cause and must demonstrate that his or her withdrawal will not adversely affect the efficient litigation of the lawsuit moving forward. Now, Verrant Yagparian — What prohibits the addition of a lawyer? You have a lawyer that's — one lawyer is not withdrawing. You add counsel. Does that reach the addition of counsel? Your Honor, my recollection of things, and I think I'm right about this, is that Yagparian moved to withdraw. And in that same pleading, Hamervold asked to take over for his own defense and defense of his firm, and the trial court discussed at significant length the fact that, number one, an attorney seeking to withdraw must establish good cause. And ordinarily that's because it's going to delay the proceedings. You're ready to go to trial, and sometimes that's a delaying tactic, all those kinds of reasons. But here he's — the case is going to go forward, I'll bet, as counsel for himself. I understand that, and, Your Honor, I'm going to be addressing it. There are several problems with that. Probably the largest is the protective law. You go ahead. I don't want to pull you off of that. Well, thank you, sir. What I was going to say is Mr. Yagparian answered the lawsuit on behalf of Hamervold and his firm, and continued to represent both throughout the pendency of the case. The trial court found, we believe correctly, that Yagparian did not meet his burden of establishing good cause. The second key point here is that Hamervold cannot represent himself in the underlying case because he is a necessary fact witness who will provide extensive testimony at the trial. The applicable disciplinary rules, and Hamervold referenced one earlier, and case law discussing those rules say that an attorney shall not act as an advocate or accept employment as an advocate if the attorney knows or believes that he is or may be a witness necessary to establish an essential fact on behalf of his client. Does that speak to self-representation or representation of others? Well, Your Honor, I think it certainly speaks to the representation of others, and I would argue, particularly with the facts that we have here where the interests of Mr. Hamervold and his professional corporation are completely aligned, that it speaks to him as well. Mr. Hamervold is also prevented from representing his firm. He's the sole owner. The interests are identical, and I believe that our trial judge, Judge Mazant, referenced that in his order, and that's distinguishable from the O'Reilly v. New York Time case that Mr. Hamervold heavily relies on, and I'm going to touch on that here in a few moments. The third point is that Hamervold cannot represent himself, per se, because it would lead to hybrid representation. The trial court did not find that Yigparian demonstrated good cause and did not permit him to withdraw, and if Hamervold was to act as associate counsel or co-counsel, there would be hybrid representation. And the statutory right to self-representation and the right to be represented by counsel cannot be exercised at the same time. The fourth point is that the requested withdrawal of Mr. Yigparian and the permitted substitution of Hamervold would prejudice my clients and interfere with the administration of justice by disrupting discovery and the efficient litigation of the lawsuit. Well, if Hamervold PLC is a separate entity, then how do you treat Hamervold as the same person for purposes of hybrid representation? Your Honor, I guess what I'm saying is the trial court found — You can't have it both ways, can you? No, sir, but if Mr. Hamervold and his firm have counsel — I'm sorry? If Mr. Hamervold and his firm have counsel, Mr. Hamervold cannot also act as counsel. That's the point that I'm making. You're focusing on — it sounds to me like you're hanging your hat on the withdrawal or not. Well, not necessarily, but I do think the withdrawal is important, and sort of ignoring my notes here, let me just jump ahead and make a couple of points that I think address that. First of all, Mr. Yugoparian sought withdrawal based upon information that he received from Hamervold that the insurance policy that was providing a defense was eroding. He did not testify that he had ever been discharged by Hamervold or his firm. He did not address, as the trial court noted, how allowing Hamervold to take over and substitute in would not prejudice my clients, and that's where the protective order comes into play that I'm going to get to in a minute. And Hamervold did not present evidence that the policy had eroded. He told the panel here moments ago that it was about half eroded. He said he testified. Excuse me? He said he testified that the insurance policy was being diminished. I think that's correct, but his testimony did not indicate or even suggest that it was diminished as of that date. He told the panel 10 minutes ago that he thinks it was about half diminished. But the other point is Mr. Hamervold dodged this question a little bit when he was asked by the panel. He did not testify that he could not afford to hire counsel, period. When, I believe, Judge Clement asked Mr. Hamervold about affordability, and he talked about his insurance policy. He didn't talk about his own ability to retain counsel. Now, Mr. Hamervold and his firm were named as defendants in this case back in September of 2016. Yegparian acted as counsel throughout the case. And in the motion that was filed, well, before we talk about that, my clients specifically alleged that Hamervold and his co-conspirators had engaged in an illegal scheme that was designed to defraud them as well as other jewelers. And my clients also alleged that the defendants continued to harass and threaten them during the pendency of the case. Now, given the allegations, the ones I've just referenced, my clients were legitimately concerned that any confidential information involving their customers and business transactions that they had with their customers that they were compelled to produce during the course of discovery would be used in furtherance of this illegal scheme. In an attempt to address and alleviate the concern, my clients sought and obtained a protective order. It was entered by the trial court in October of 2016. It permitted all parties, not just my clients, but all parties to designate discovery material as attorneys' eyes only material when counsel believed in good faith that such a designation was appropriate. About three weeks, pardon me, three months later, my clients filed a motion to clarify the protective order to make it crystal clear that the attorney defendants would not be permitted access to this attorneys' eyes only material. And this motion to clarify was unopposed. The defendants did not oppose the motion. The court granted the motion. And then we get to what Judge Higginbotham was referencing earlier. Mr. Hammervold fills out his paperwork and gets admitted to practice in the Eastern District and then appears as associate counsel for himself. His co-conspirators file applications to appear pro hoc vicee in the case. And then they file the emergency motion to modify the protective order seeking to remove all attorneys' eyes only designations because they had appeared as counsel for themselves. And Mr. Hammervold and his firm agreed with that requested relief in the motion to withdraw and motion for substitution. It's referenced in a footnote where they say they agree to it and adopt that argument. Now, in support of the motion to withdraw, Yigparian again just said, hey, I was instructed that there were not going to be sufficient resources to pay me through trial. We had not gotten to trial yet. And Hammervold argued that he had the right to self-representation under 28 U.S.C. 1654. My clients opposed the motion contending that the motion was filed for tactical purposes. And we believe that that's the way that the trial court saw things. The motion for modification of the protective order or the motion? What motion are you referencing? Well, both. But in this context, the motion to withdraw and substitute, as soon as we advised the parties through a filing made in the case that we were opposed to modifying the protective order, that's when Hammervold first sought to represent himself and his law firm. And the trial court, when it denied the motion to withdraw and the motion for substitution, specifically noted that Hammervold and his firm had been defendants in the case since September of 2016, but it was only after my clients objected to the emergency motion to modify the protective order that he first felt the need to seek to represent himself in the case. And that's the type of gamesmanship that I think the case law clearly discusses. Courts — Well, could the district court simply have said that since the sense of the protective order was to confine this to attorneys themselves, if you have self-representation, that he would not be included in that council of that class? Well — That we're not in a class of lawyers who are not representing themselves, but are appearing ordinarily as advocates for another. And then that's the sense of the order. And then it doesn't follow that if he's going to represent himself, that he's necessarily included in that class of lawyers. Your Honor, I think what my clients were endeavoring to do was — So he wouldn't get — In other words, it's simple. After that, you're not going to gain access to this information by the self-representation. He's not supposed to gain access. But again, not only did Mr. Hammervold seek to represent himself and his firm, he and his co-conspirators were actively seeking relief from the trial court, doing away with the AEO designations after not opposing our motion to clarify the protective order addressing those very issues. And Mr. Hammervold mentioned something earlier that I think is important. He talked about 17 depositions that were still going to be taken in the case. I don't know if that number is accurate, but what I do know is that we're talking about jewelers situated throughout the country who had been threatened, who felt like they were being extorted and shaken down, who did not want Mr. Hammervold or his co-conspirators sitting in on deposition testimony they had to give in the case. And that was raising problems, but because they were not attorneys of record, ultimately they agreed to not sit in on those depositions. If Hammervold is permitted to represent himself and his firm, we're going to incur those same types of problems again. Not only are we talking about — I was just suggesting to you that's not inevitably so. Pardon me, sir? I was just suggesting to you that it does not appear that he would necessarily do that. In other words, the district court has well within its power on these facts, as you suggest, to say that the sense of that order is to use exactly what it was to confine it to the attorneys meeting an independent counsel and not parties. And you can represent yourself, but you don't get access to that information. Yes, sir. I understand that. I guess the point that I'm making — My question is why wouldn't that be — you're suggesting that's not curative. I'm not — I don't know where it would be or not. Mr. Conner, I'm respectfully suggesting that that's probably — Well, I don't know where it would be or not. I don't know enough about your case, and I wouldn't — yes. I guess what I'm saying is the way you presented the beginning of your question, I was thinking about documents. We had designated a lot of documents as attorneys' eyes only, right? Right. Customer invoices and receipts and things like that. And my client wants to protect that information. I think they've got a legitimate interest in doing so. But I was also talking, when Mr. Hammervold says, well, it's not going to — Well, this is not information that's going to come out in the trial. Possibly yes, possibly no. But the point that I'm making is the reason why this is so concerning, not only would it make sensitive confidential information as found by the trial court available to Mr. Hammervold, it's also going to disrupt things, because every time we fly into a city to take a deposition of a jeweler who has felt like they were shaken down by Hammervold and his co-conspirators, they're not going to want to testify if Hammervold's even allowed to be in the room. So that would intimidate the witnesses? As the witnesses have expressed, yes, Your Honor. So that's a concern we've got. The other thing is that, you know, when we talk about Mr. Hammervold's firm, it is a corporation. That fact is undisputed. Corporations must be represented by licensed counsel. That's undisputed. And while Mr. Hammervold is a licensed attorney, going back to something Judge Clement said, he is a key necessary witness in the case. And his intent to act as an advocate for his firm while he is a defendant violates Rule 3.08 of the Texas Disciplinary Rules, Rule 3.7 of the ABA Model Rules, and cases interpreting those things. And this ethical rule is underscored by some important concerns, the possibility that when Hammervold is addressing the jury at trial, he will appear to be vouching for his own credibility as both a lawyer and a witness, the unfair and difficult situation that the attorneys for the Diamond Doctor and David Blank will face when they have to cross-examine Hammervold at trial and seek to impeach his credibility, and the appearance of impropriety that's created, specifically the likely implication that Hammervold may be distorting the truth for the sake of his firm. It's undisputed that Hammervold is going to be the primary, if not the sole witness, for his corporation as well as for himself at trial. And his testimony is going to address a number of contested fact issues. If he's permitted to represent himself in his firm, the integrity of the adversary process will be compromised. The line between arguments that Hammervold is making as counsel and testimony that Hammervold is giving as a defendant. Is that him alone or is that a firm of lawyers? What is it? I thought it was just him. He's a sole member. It's him, sole member, sole owner. If he was with a larger firm and had someone at the firm wanting to act as his counsel, I don't think I'd be making the same argument, Your Honor. But he is it. And the line between arguments made by Hammervold as counsel, testimony he gives as a defendant, is clearly going to be blurred, which is likely to undermine the ability. My point is, I suggest to you, is that, look, if a lawyer can represent himself, okay, but there's a difference between that, a lawyer taking on a client, and going forward for trial. That's quite clear when you're going to be a witness and so forth. The rules are quite clear about that. But if he represents himself, because he can do so, right? Now, you say, well, he's representing the LIC. But the LIC is him because it's a sole membership. What do you say to that? Well, I would refer the Court to the case of Nocula v. UBS Corporation. A pro se litigant cannot represent another litigant in court. Well, that begs the question of, is there another litigant? Technically, under the law, I think the answer is yes, Your Honor. And I'm not trying to be cute. I think that case after case recognizes corporations as distinct entities. The concern that we've got -- Would your argument be the same if he had no LIC? If it was just Mr. Hammervold? I think some of the arguments would apply. Others may not. But we'd still have the issue with the protective order, again, that they did not oppose, the clarification to it that they did not oppose, the question about gamesmanship, the fact that the trial court clearly viewed it as gamesmanship. And I would hearken back to that fact because there is a case, and I'm forgetting the name of it off the top of my head, I want to say that it's the Rochon case where, and I think Judge Clement was involved in that decision, where the court said, look, while some other court may disagree with the trial court's rationale, if reasonable minds could disagree, the trial court's ruling is going to be affirmed. And we're asking that it be affirmed here. Public confidence in our legal system is going to be jeopardized if Hammervold is permitted to serve in the dual role of attorney and witness in this case. There is certain to be a tangible and unavoidable scrambling of roles. My clients and I thank the panel for the time and consideration, and we respectfully ask that the rulings of the trial court be affirmed in all respects. All right. Thank you, Mr. Klatsky. Thank you, Mr. Hammervold. You've saved time for a moment. May it please the Court. The standard of review is mixed here. The elements that involve the statutory interpretation of the right to self-representation, the interpretation of Ethical Rule 3.08, those are questions of law, as is their application. The only element that is given a substantial deference to the trial court are specific findings that fall within those rubrics. Because the court did not apply the correct legal standard, it didn't make any of the findings that would justify removing the right to self-representation. The court was working with this incorrect good cause standard and found that I hadn't met my burden to show good cause. There are no findings to defer to here. You also heard that there was ongoing harassment and threats by me, but there's no specificity to it in the oral argument, and if you actually look down the citations that are in the appellee's brief, there's nothing that applies to me. The only citation that applies to me. Was there a trial date set in this case? Not with respect to me. There was a trial date in August, and that didn't go forward because the other parties settled with the payment to Mnuchin. The litigation we're talking about, at the time of the district court's order, there was no time for trial set? Well, there was, Your Honor. The trial date was set in August. And when was it? I'm trying to get at the proximity of this contest. You were withdrawing and coming in on the trial date. Sure, Your Honor. We moved, I believe, in the middle of May, and trial was in August, so it was about two and a half months before trial, and there was a substantial amount of discovery in between now and then. And part of the reason I moved when I did is because I reviewed the case law, and I knew that one of the bases for denying a self-representation is if you wait right before trial and then there's a potential for delay. They would be saying the same thing. This was gamesmanship. He's trying to delay trial. He doesn't want to go forward with trial. And, you know, it would be one thing or the other, casting aspersions on my motives. But I want to return to this. There was no harassment by me. There was no threat. Let me ask another question. In this ongoing process, assume that you remained without the withdrawal. Mr. McPheron continued in counsel, and you were the client. And you were out taking the deposition of these other operations and so forth. Would you have been able to attend those depositions as a client? I'm assuming that Dick Pheron was your counsel and you were being represented by him. I believe that I would have the right to attend one. And I actually did attend one of the jeweler's depositions. Well, there was no order that prevented you from doing so then? Yes, Your Honor. So without the order, you would have gained whatever information there was out there in those depositions? Well, they may have been able to designate them attorneys' eyes only, and then there would have been a process for contesting that. Attorneys only to take depositions? Okay. And respectfully, we have submitted that they have used the attorneys' eyes only in this case. But this Court doesn't need to get into the nitty-gritty of the discovery issues because no court has ever held that that is a precondition to the self-representation right. And the trial court has discretion and means to control discovery and to determine what needs to be provided and what should be protected. The final element that I want to address is 3.08. There are two, essentially, rationales to this. One is a conflict of interest rationale. And I thought it was a bit disingenuous whenever they said in their brief that Handful PLC is entitled to counsel that is not going to be serving in the dual role of the witness. They're not looking to protect my solo practice from me. This is a situation that requires this Court to look at the specific context of this. That's the FDIC case and the Jackson v. Adcock case. Disqualification of a witness based on Rule 308 requires the Court to look and determine whether there is actual prejudice to the opposing party. And here — You're running short on time. Let me ask you one more question to have an understanding of the nature of the litigation. What is that issue in the Underground case itself? What are you fighting over? The claim — the underlying claim? Yes. The underlying claim is that another attorney, Brian Mnookin, started a media campaign in which he was soliciting clients. And Diamond Doctor approached him and said, We would like to retain you to end that campaign. And they claimed that due to the pressure of the campaign, that his intention all along was that they come to him and make that demand, and that that is extortion. So there was an extortion claim against him. I received referrals from that attorney, and I prosecuted those cases. That's the only thing that's alleged as to me. There's also a conclusory allegation that I was involved in the conspiracy. What are the underlying claims that the lawyers are advertising, hoping to get? You have lawyers out there advertising and hoping to get this business. What is the claim that they're trying to get? I don't understand. Oh, the underlying claim is that the jeweler was selling diamonds that they knew were overgraded, that they made specific representations about what the color and clarity were, and they knew that they were three to four grades higher than the actual grade of those diamonds. But if they paid the law firm, they wouldn't go forward with making that information public. It was a bribery scheme, an extortion scheme. Well, that's their claim, and that's against Mnuchin. There's no claim that I was seeking any type of representation agreement. I was not party to those communications. And I think that if we want to get into the merits of the claim, Diamond Doctor reached out to Mnuchin. I don't want to get into the merits of the claim. I just want to try to get a sense of what the litigation is about. Thank you. All right. Thank you, Mr. Hummel. Your case is under submission. The last case for today.